NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

06-3196

JIMMY L. DAVIS,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

_____

DECIDED: November 9, 2006

_____

Before LOURIE, SCHALL, and GAJARSA, Circuit Judges.

PER CURIAM.

## DECISION

Jimmy L. Davis ("Davis") appeals from the final decision of the Merit Systems Protection Board (the "Board") sustaining his removal from the Department of Veterans Affairs ("the agency") Medical Center ("VAMC") as a Licensed Practical Nurse. Davis v. Dep't of Veterans Affairs, PH-0752-05-0554-I-1 (M.S.P.B. Dec. 12, 2005) ("Final Decision"). We affirm.

## BACKGROUND

Davis was employed as a Licensed Practical Nurse ("LPN") in the medical/surgical unit of the VAMC Lebanon Medical Center. One of his responsibilities

as an LPN was dispensing narcotic medications to patients. On July 13, 2005, Davis was removed from his position after being charged with illegal drug use and for violating agency procedures relating to the handling of controlled narcotics. Those charges arose from events that occurred on August 4, 2005.

On that day, the nurse manager on duty, Susan Brown, became aware of discrepancies involving medication for a number of patients. One patient, for example, complained that he requested pain medication, but never received it. Brown investigated the matter further and discovered that Davis retrieved narcotic pain medication from the storage area, which is also referred to as the Omnicell. According to the Omnicell report, Davis took four oxycodone/acetaminophen pills and one lorazepam tablet, intended for three different patients. Davis, however, failed to record whether the narcotics were actually administered to the patients in the patients' charts or in the Bar Code Medication Administration ("BCMA")—a system that tracks the administration of medications for inpatient units. Final Decision, slip op. at 4-5. Another discrepancy was revealed when Davis recorded on a patient's chart that he administered pain medication to the patient at 4:13 pm, when in fact that patient had been transferred to another unit in the hospital at 3:00 pm—over an hour earlier.

Brown reported the discrepancies in a voluntary witness statement and notified the police. The police detective assigned to the matter, Sergeant Lynn Rutt ("Sgt. Rutt"), conducted an investigation during which Davis admitted that he had taken narcotics, including Endocet, Tylenol with codeine, extra strength Vicodin and morphine, either prior to his shift or during work. Id., slip op. at 5. Davis did not have a legal prescription for any of these medications. Id. Sgt. Rutt urged agency officials to require

Davis to take a Reasonable Suspicion Drug Test, pursuant to the policy set forth in Lebanon Medical Center Memorandum N121-35. The agency officials ordered Davis to submit to the test, and Davis complied. On August 6, 2005, Davis tested positive for morphine.

By letter dated June 10, 2005, the agency notified Davis that it was proposing his removal from VAMC because of his illegal drug use and for violating agency BCMA procedures. On July 13, 2005, the agency issued a letter notifying Davis of the agency's decision to remove him from his position as an LPN. Davis appealed his removal to the Board.

On December 12, 2005, the Administrative Judge ("AJ") denied Davis's petition in an initial decision. The AJ sustained the charges and found that the penalty was reasonable. First, the AJ concluded that the agency proved the charge of illegal drug use by preponderant evidence. Id. at 3-5. The AJ noted that Davis tested positive for morphine, and that he did not have a legal prescription for it. In addition, the AJ relied on Davis's own admissions that he took controlled narcotics without having a legal prescription. The AJ found that that conduct violated VAMC's Drug Free Workplace Policy as set forth in Memorandum N121-35. In light of the evidence, the illegal drug use charge was sustained.

The AJ then found that Davis had violated VAMC Lebanon Medical Center Memorandum 22-06, which establishes the policy and procedures for BCMA, in at least four instances. The AJ noted the three instances described above wherein Davis removed narcotic medications from the Omnicell, but failed to record the proper information in the BCMA or the patients' charts. The AJ credited the testimony of Sgt.

Rutt who testified that the inconsistent records suggested that a theft had occurred because the narcotics taken by Davis from the Omnicell were not properly recorded in the BCMA system. Id. at 5. The AJ also credited testimony from Suzette Umlauf who testified that Davis recorded administering medication to a patient at 4:13 pm, although the patient had already been transferred to another unit. Additionally, the AJ found that Davis admitted that he used the secure log-in information of another nurse, Pam Rogeaux, in order to retrieve two Percocet pills. The AJ also referenced the patients' medication histories, the Omnicell reports, and the BCMA records. Based on this evidence, the AJ sustained the second charge of violating BCMA procedures. Moreover, the AJ held that Davis failed to prove that the agency committed harmful procedural error and concluded that the penalty was reasonable.

Davis did not seek review by the full Board. Thus, the AJ's decision accordingly became the final decision of the Board. See 5 C.F.R. § 1201.113. Davis appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000); see Briggs v. Merit Sys. Prot. Bd., 331 F.3d 1307, 1311 (Fed. Cir. 2003).

On appeal, Davis primarily challenges the reasonable suspicion drug test. Davis argues that no just cause existed for the agency to have ordered the test and that the

agency failed to follow its own policy in administering it. According to Davis, that constituted harmful error. Davis also challenges the Board's factual findings with respect to the narcotics discrepancies. Specifically, Davis contends that removal was not proper because the Board mischaracterized "charting errors" as "narcotics discrepancies." Notably, Davis does not challenge the underlying findings that he tested positive for morphine without a legal prescription and that he violated agency procedures by mishandling controlled narcotics.

In response, the government argues that the agency acted within policy guidelines when it ordered the reasonable suspicion drug test, and that Davis fails to establish harmful error. Moreover, the government contends that substantial evidence supports the Board's findings.

We agree with the government that substantial evidence supports the Board's determination that just cause existed for ordering the drug test. The VAMC's policy provides that an employee "shall be required to submit to reasonable suspicion drug and/or alcohol testing when, in the judgment of the appropriate management officials and based on information known at the time the decision to test is made, there is a reasonable suspicion to believe that an employee . . . [h]as used . . . drugs or alcohol in violation of The Drug Free Workplace Policy" or "is subjected to a police investigation, arrest or conviction, related to drug or alcohol use, possession or distribution." Memorandum N121-35(3)(b)(1)(a),(c).

Here, substantial evidence exists in the record establishing reasonable suspicion. In particular, the AJ relied on the testimonies of Sgt. Rutt and Umlauf in concluding that Davis appeared to have taken narcotics from the Omnicell without administering the

drugs to patients. In addition, Brown's voluntary witness statement describing the narcotics discrepancies also supports a finding of just cause. Moreover, at the time a drug test was ordered, the police investigation headed by Sgt. Rutt had already begun, thus serving as a second basis for ordering the drug test under the policy.

With regard to Davis's argument that the agency failed to follow its own procedures for ordering the test, the AJ found that the agency properly followed policy and procedure as set forth in Memorandum N121-35. Final Decision, slip op. at 10. The policy provides that if an employee is suspected of illegal drug use, the supervisor must "gather all information, facts, and circumstances to and supporting the suspicion." Memorandum N121-35(3)(b)(2). The information must then be presented, in writing, to the appropriate agency officials. The written request must include certain information concerning the drug related incident.

Here, the AJ found that the proper procedure was followed by the agency. The AJ considered evidence the agency adduced, including a series of e-mails among the VA Chief of Police and the appropriate agency officials. Final Decision, slip op. at 5. The e-mails discuss the circumstances surrounding the allegations of narcotics theft by Davis. J.A. at 36. The e-mails reference Brown's report, the discrepancies in the Omnicell and BCMA records, and complaints from patients of not having received their medications. The e-mails further mention the criminal investigation that was underway. The AJ found that that evidence satisfied the procedural requirements set forth in Memorandum N121-35. The AJ also concluded that Davis failed to prove a violation of this policy by preponderant evidence. Final Decision, slip op. at 10. We discern no error in that finding.

Lastly, we reject Davis's argument that there was no evidence to support the Board's conclusion that "narcotics discrepancies," as opposed to "charting errors," occurred. Davis fails to identify any cognizable difference between the two characterizations. As discussed above, substantial evidence exists in the record to support the conclusion that Davis was responsible for the discrepancies in the recording and inventory of narcotics that led to a police investigation, and ultimately to his removal. Thus, that argument likewise fails.

## CONCLUSION

We have considered Davis's remaining arguments and find them unpersuasive. We therefore affirm the Board's decision.